**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE-OPELOUSAS DIVISION**

NELSON LANDRY                                    CIVIL ACTION NO. 05-376

VERSUS                                                  JUDGE MELANÇON

SIDNEY HEBERT, ET. AL.                      MAGISTRATE JUDGE HILL

<u>**MEMORANDUM RULING**</u>

Before the Court are defendant Iberia Parish Hospital Service District's (the "Hospital") Motion for Summary Judgment [Rec. Doc. 54] and Memorandum in Support thereof [Rec. Doc. 55], Nelson Landry's ("Landry" or "plaintiff") Memorandum in Opposition to Summary Judgment [Rec. Doc. 59], and the Hospital's Reply to plaintiff's Opposition [Rec. Doc. 61].  For the reasons that follow, the Hospital's Motion [Rec. Doc. 54] will be **GRANTED**.

**I.      BACKGROUND**

From June 29 until December 24, 2004, Landry was incarcerated at the Iberia Parish Jail (the "Jail") for violating a temporary restraining order.  During this time, the Hospital provided the Jail with health care professionals for " . . . sick call, routine medication rounds, to administer PRN medications and to complete assessments of incoming inmates."  *Hospital's Statement of Uncontested Material Facts* [Rec. Doc. 54-2], pg. 1.  Upon being booked into the Jail, Landry completed certain medical screening forms wherein he indicated that he had a history of mental illness

and was prescribed the drug Risperdal.[1]  The Jail accepted these forms through Don Turner, one of the nurses provided by the Hospital.

Throughout his incarceration, plaintiff's behavior became increasingly erratic, and, allegedly, by early December 2004, plaintiff ". . . was in such a decrepit state that he was rushed to [University Medical Center]" where he was treated for a serious leg infection.  *Plaintiff's Memorandum in Opposition* [Rec. Doc. 59], pg. 3. On December 22, 2004, plaintiff was released from UMC to the custody of the Iberia Parish Sheriff's Office and, on December 24, 2004, was released from the Jail to the custody of his father.  After his release, plaintiff was taken back to UMC and then to Lafayette General Medical Center where he was treated for both physical and mental maladies.

Plaintiff filed his Complaint [Rec. Doc. 1] in this Court on February 28, 2005 naming Sidney Hebert, the Iberia Parish Police Jury, Maggie Daniels, Curtis Boudoin, Ray Fremin, Jr., Lloyd Brown, Caesar Comeaux, Bernard Broussard, George Gros, Barry Verret, Glenn Romero, Roger Duncan, Jerome Fitch, Zeb Simon, and M. Larry Richard (collectively "defendants") as defendants.  Plaintiff alleged that defendants violated Title 42, Sections 1981, 1983, 1985, and 1987(d) of the United States Code and the Eighth and Fourteenth Amendments to the United States Constitution by withholding essential medical attention resulting in damages

---

[1]      According to the May 2007 Edition of the *Physician's Desk Reference*, Risperdal is a psychotropic agent effective in the treatment of schizophrenia and bipolar mania.

to plaintiff.  More than a year after the original complaint, on October 17, 2006, plaintiff filed a Motion to Amend [Rec. Doc. 27] to add allegations of medical malpractice against the Hospital.[2]  Plaintiff's motion was granted on December 13, 2006 [Rec. Doc. 38], and the case was administratively terminated the same day to allow plaintiff the opportunity to pursue review of his medical malpractice claims before a medical review panel pursuant to Louisiana Revised Statute 40:1299.47.

On February 22, 2008, upon being advised that the Medical Review Panel had made its determination, the Court reopened the case [Rec. Doc. 49]. The Hospital then filed this Motion for Summary Judgment [Rec. Doc. 54] alleging that plaintiff's claims against it are prescribed under Louisiana law or, alternatively, that plaintiff cannot fulfill his burden of proof at trial.  Plaintiff opposes this motion.

## II.  LAW & ANALYSIS

A.    *The Louisiana Medical Malpractice Act*

Section 1299.41 of Title 40 of the Louisiana Revised Statutes, entitled the Louisiana Medical Malpractice Act (the "MMA"), sets forth a cause of action against covered "health care providers" for medical malpractice.  A "health care provider" under this section includes:

---

[2]     It is important to note that plaintiff's claims against the Hospital are not founded in §1983 as neither "[u]nsuccessful medical treatment" nor "[m]ere negligence, neglect or medical malpractice"  give rise to a §1983 cause of action.  *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991) (*citing Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985) *and Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1979)).  Nonetheless, this Court has supplemental jurisdiction over this matter under 28 U.S.C. §1367(a) as the claims are part of the same case or controversy under Article III of the United States Constitution.  28 U.S.C. §1367(a).

> . . . a person, partnership, limited liability partnership, limited liability company, corporation, facility, or institution licensed or certified by this state to provide health care or professional services as a physician, hospital, nursing home, community blood center, tissue bank, dentist, registered or licensed practical nurse or certified nurse assistant, offshore health service provider, ambulance service under circumstances in which the provisions of R.S. 40:1299.39 are not applicable, certified registered nurse anesthetist, nurse midwife, licensed midwife, pharmacist, optometrist, podiatrist, chiropractor, physical therapist, occupational therapist, psychologist, social worker, licensed professional counselor, licensed perfusionist, or any nonprofit facility considered tax-exempt under Section 501(c)(3), Internal Revenue Code, pursuant to 26 U.S.C. 501(c)(3), for the diagnosis and treatment of cancer or cancer-related diseases, whether or not such a facility is required to be licensed by this state, or any professional corporation a health care provider is authorized to form under the provisions of Title 12 of the Louisiana Revised Statutes of 1950, or any partnership, limited liability partnership, limited liability company, management company, or corporation whose business is conducted principally by health care providers, or an officer, employee, partner, member, shareholder, or agent thereof acting in the course and scope of his employment.
>
> La. Rev. Stat. §40:1299.41(A)(1)

As the Hospital clearly falls within this definition, this matter will be resolved by reference to the MMA.

B.   *Prescription*

In its Motion for Summary Judgment [Rec. Doc. 54], the Hospital maintains that plaintiff's malpractice action is prescribed.  In response, plaintiff alleges that the prescriptive period was interrupted by virtue of his timely suit against the solidary obligors not covered by the MMA.  The parties have not presented, and the Court's independent research has not uncovered, any decision of the Louisiana Supreme

Court which squarely addresses this issue.[3]  Accordingly, in deciding this case, the Court must make an *Erie* guess as to what the Louisiana Supreme Court would most likely hold in this situation.  *Herrmann Holdings Ltd. v. Lucent Techs., Inc.*, 302 F.3d 552, 558 (5th Cir. 2002) (*citing Barfield v. Madison County, Miss.*, 212 F.3d 269, 271-72 (5th Cir. 2000)).  The Court's task is to "attempt to predict state law, not to create or modify it," and, in formulating its decision, the Court may defer to intermediate state appellate court decisions "unless convinced by other persuasive data that the highest court of the state would decide otherwise."  *Id., citing United Parcel Service, Inc. v. Weben Indus., Inc.*, 794 F.2d 1005, 1008 (5th Cir. 1996) *and First Nat'l Bank of Durant v. Trans Terra Corp. Int'l,* 142 F.3d 802, 809 (5th Cir. 1998).[4]

In this case, the applicable prescriptive period for the cause of action against the Hospital is found at Louisiana Revised Statute §9:5628.  That section, in pertinent part, provides:

> No action for damages for injury or death against any physician, chiropractor, nurse, licensed midwife practitioner, dentist, psychologist, optometrist, hospital or nursing home duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1299.41(A), whether based upon tort, or breach of contract, or

---

[3]     In *Schulingkamp v. Ochsner Clinic*, 2002-1537 (La. 2/25/03), 838 So.2d 1289, the Louisiana Supreme Court anticipated addressing the issue of "whether a medical malpractice plaintiff may file a request for a medical review panel at any time during the pendency of a suit against tort defendants who were alleged to be solidarily liable with the medical malpractice defendants against whom the request is filed."  However, as plaintiff in that case did not allege solidary liability between the defendants, the Court left the issue unresolved.

[4]     While the Court may refer to the decisions of state intermediate courts, those decision are not controlling.  *United Teachers Assocs. Ins. Co. v. Union Labor Life Ins. Co.*, 414 F.3d 558, 565-66 (5th Cir. 2005).

otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.

La. Rev. Stat. §9:5628(A).

Prior to commencing suit under the MMA, a plaintiff must submit his claim for review by a state medical review panel.  La. Rev. Stat. §40:1299.47.  When a medical review panel is convened pursuant to §40:1299.47, prescription against the health care provider is suspended until ninety days following notification that the panel has issued an opinion or made a determination that the health care provider is not covered by the statute.  La. Rev. Stat. §40:1299.47(A)(2)(a).  However, "[t]he filing of a panel request after the accrual of a year is ineffective to suspend prescription from the date of the act because prescription cannot be suspended after it has run."  *Geiger v. State ex. rel. Dept. of Health and Hosp.*, 2001-2206 (La. 4/12/02), 815 So.2d 80, 83 (*Geiger II*) (*citing Rizer v. American Sur. & Fid. Ins. Co.*, 95-1200 (La. 3/8/96), 669 So.2d 387, 390-91).

While Landry did request review of his claim on January 9, 2007 and was notified of the panel's decision on January 31, 2008, the Hospital argues that plaintiff's request for a medical review panel was untimely, and, as a result, his claim is prescribed.  Generally, the party pleading prescription has the burden of proving that a lawsuit has prescribed.  *Petry v. Hebert*, 2006-1447 (La. App. 3 Cir. 5/2/07),

957 So.2d 286, 288 (*citing Younger v. Marshall Indus., Inc.*, 618 So.2d 866, 869 (La. 1993)).  However, if on the face of the petition it appears that prescription has run, the burden shifts to the plaintiff to prove a suspension or interruption of the prescriptive period.  *Id.*  In this case, it appears that the prescriptive period began to run on December 24, 2004, the date Landry was released from the Jail.  Yet, plaintiff did not request a medical review panel until January of 2007.  Thus, on its face, plaintiff's cause of action is prescribed and it is incumbent upon him to demonstrate either an interruption or suspension of the applicable period.

Plaintiff argues that the timely filing of suit against the defendants interrupted prescription as to the Hospital because it is, allegedly, a solidary obligor.  As noted *supra*, the Louisiana Supreme Court has not squarely addressed whether a timely filed suit against a solidary obligor interrupts prescription as to a defendant covered by the MMA.  Further, there is a split in authority among the Louisiana circuit courts that have addressed this issued.  On the one hand, plaintiff's position has been adopted by Louisiana Courts of Appeal for the First and Second Circuits.  *See Geiger v. State ex. rel. Dept. of Health and Hosp.*, 2000-0784 (La. App. 1 Cir. 6/22/01), 812 So.2d 669 *(Geiger I)*, *overruled by* 2001-2206 (La. 04/12/02), 815 So.2d 80[5]; *and Coleman v. Acromed Corp.*, 32,590 (La. App. 2 Cir. 1/26/00), 764

---

[5]    In *Geiger I*, the Louisiana First Circuit Court of Appeal held that a timely filed suit against a solidary obligor interrupts the prescriptive period applicable to the MMA.  However, on appeal, the Louisiana Supreme Court found that issue was moot and not properly before the First Circuit because the suit against the allegedly solidary obligor was not, in fact, timely.  *Geiger II*, 815 So. 2d at 84.  Accordingly, the Supreme Court reversed the First Circuit's ruling, but did not address the merits of the issue now before this Court.

So.2d 81, *writ denied* 2000-0422 (La. 3/31/00), 759 So.2d 73.   Contrarily, the Louisiana Courts of Appeal for the Third and Fourth Circuits have found that the applicable prescriptive period can only be suspended by timely requesting a medical review panel.  *See Mitchell v. Rehab. Inst. of New Orleans, Inc.*, 2006-0910 (La. App. 4 Cir. 2/14/07), 953 So.2d 75; *Yen v. Avoyelles Parish Police Jury*, 2007-225 (La. App. 3 Cir. 12/05/07), 971 So.2d 536, *rehearing denied.*

Upon review of the jurisprudence, the Court is of the view that the Louisiana Supreme Court would most likely adopt the position of the Third and Fourth Circuits. In part, the Court's finding is based on the case of *Bush v. Nat'l Health Care of Leesville*, 2005-2477 (La. 10/17/06), 939 So.2d 1216.  In that case, plaintiffs filed suit against Dr. Celeste Lujan-Beaz, a physician covered under the provisions of the MMA, and Byrd Regional Hospital, a medical facility which is not covered by the MMA.  Dr. Lujan-Beaz filed an exception of prematurity, which was granted by the trial court, on the basis of plaintiffs' failure to submit their claims against her to a medical review board.  Thereafter, plaintiffs convened a review panel and, upon issuance of its decision, refiled their petition against Dr. Lujan-Beaz.  At this point, Dr. Lujan-Beaz filed an exception of prescription alleging that more than one year had elapsed between the alleged malpractice and the convention of the medical review panel.  The trial denied the exception and proceeded to trial.  On appeal, the Louisiana Supreme Court, citing its earlier decision in *LeBreton v. Rabito*, 97-2221 (La. 7/8/98), 714 So.2d 1226 (holding that the specific statutory provision regarding

suspension of prescription when a plaintiff requests a medical review panel must be read alone and will only suspend, as opposed to interrupt, prescription), held that plaintiffs' malpractice action against Dr. Lujan-Beaz was prescribed.

While the Louisiana Supreme Court premised its decision in *Bush* on the retroactive application of *LeBreton*, which is not at issue in this case, the factual situation is on point with the facts here. The Fourth Circuit, in *Mitchell, supra*, relied on *Bush* in holding, as this Court does today, that timely suit against a solidary obligor does not interrupt prescription as to defendants covered by the MMA, stating

> . . . it is clear from the decision in *Bush* that even if a medical malpractice plaintiff initially filed a timely suit in a court of competent jurisdiction against a defendant not qualified under the medical malpractice act, alleging solidary liability between the defendant and a defendant healthcare provider covered by the act, the specific statutory provision providing for the suspension of prescription found in the medical malpractice act is to be applied alone and not with the more general Civil Code article which addresses the interruption of prescription.
> *Mitchell*, 953 So.2d at 80.

In *Yen*, *supra*, the Third Circuit agreed with the Fourth Circuit's view of *Bush*. *Yen*, 971 So.2d at 540. In that case, the family of Lenard Robinson, an inmate at the Avoyelles Correctional Center, filed suit against the Correctional Center, the Avoyelles Parish Police Jury, and the State of Louisiana alleging negligence in the care in treatment of Robinson while he was incarcerated. Later, more than one year after Robinson's death, plaintiffs amended their complaint to include the Huey P. Long Medical Center and certain treating physicians to the complaint. In response,

the Medical Center filed an exception of prescription.  As in this case, plaintiffs argued that the timely filing of suit against the non-medical defendants interrupted prescription as to all allegedly joint or solidary obligors, including the Medical Center. Citing *Mitchell* and *Bush*, the Third Circuit held that " . . . in malpractice actions, the general rules of prescription [are] trumped by the specific provisions contained in the Medical Malpractice Act," and, accordingly, the timely filing of suit against the non-covered defendants does not act to interrupt prescription as to the covered defendants.  *Id.* at 539.

Importantly, unlike *Mitchell* and *Yen*, the cases from the First and Second Circuits were decided well before the Supreme Court issued its decision in *Bush*. As such, those courts were not afforded the opportunity to consider the application of the Supreme Court's decision.  Therefore, this Court cannot weigh those cases as heavily as *Mitchell* and *Yen* in determining how the Supreme Court would decide the issue presented.  For this reason, the Court holds that the timely filing of suit against defendants who are not covered by the MMA does not interrupt or suspend prescription as to the covered defendants.[6]

Applying this finding to the facts of the instant case, it is clear that plaintiff's cause of action against the Hospital has prescribed.  The alleged malpractice occurred on December 22, 2004 and was immediately apparent to the plaintiff.

---

[6]     *See also Parrish v. Superior Energy Servs., L.L.C.*, 2008 WL 1988800 (E.D.La. 5/2/08), (Africk, J., holding that a timely suit against a solidary obligor does not interrupt prescription as to a defendant covered by the MMA).

Landry, then, had one year from that date to request review by a medical review panel.  However, no request was made until January of 2007, more than 2 years after the alleged malpractice. Plaintiff's cause of action against the Hospital is prescribed and must be dismissed.

### III.  CONCLUSION

For the reasons stated, the Hospital's Motion [Rec. Doc. 54] will be **GRANTED** and all claims against the Hospital will be **DISMISSED WITH PREJUDICE**. Further, as the Court finds that the claims against the Hospital are prescribed, it will not consider the merits of the argument that plaintiff's claims fail as a matter of law.